IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHANIE MARSHALL,

    **Plaintiff,**

                              Case No. 2:22-cv-3736

vs.                           Judge Edmund A. Sargus, Jr.

                              Magistrate Judge Elizabeth P. Deavers

SNIDER-BLAKE PERSONNEL,

    **Defendant.**

## ORDER AND INITIAL SCREEN REPORT AND RECOMMENDATION

Plaintiff, an Ohio resident who is proceeding without the assistance of counsel, moves this court for leave to proceed *in forma pauperis*. (ECF No. 1.) Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

This matter is now before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety. Further, Plaintiff's request for oral argument is **DENIED.**

I.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).

In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \* \* \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

---

[1] Formerly 28 U.S.C. § 1915(d).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.

The nature of Plaintiff's claim is not clearly stated. Construing her *pro se* Complaint liberally, however, Plaintiff appears to be attempting, in part, to assert a claim under the Fair

3

Labor Standards Act, 29 U.S.C.A. § 201 et seq. ("FLSA"), for the untimely payment of wages.[2] Additionally, she appears to be asserting a claim for a violation of 41 U.S.C. § 6503 and the Contract Clause of the United States Constitution. The Complaint also mentions in passing a breach of a contract between Plaintiff and Snider-Blake.

As the Court understands Plaintiff's allegations, Defendant Snider-Blake is a temporary staffing agency. Through Snider-Blake, Plaintiff worked for Big Lots in November 2020. On November 21, 2020, Plaintiff worked 12 hours for Big Lots and, under the terms of her agreement with Snider-Blake, she was to be paid for that work on Friday November 27, 2020.[3] Plaintiff does not allege that she has not been paid for the work she performed on November 21, 2020, but she alleges that "[a] late payment is considered the same as no payment." (ECF No. 1-1 at 9.) Beyond this, several of Plaintiff's allegations indicate that she pursued claims arising from these facts in a "lower court" proceeding. (*Id*. at 7.)

Consistent with these allegations, Plaintiff did, in fact, pursue such claims in state court. The state appellate court decision confirms this Court's understanding of Plaintiff's factual allegations, explaining and concluding, in relevant part, as follows.

> On December 1, 2020, Marshall filed a complaint against Snider-Blake asserting claims of willful nonpayment and breach of contract.[1] Snider-Blake is a temporary staffing agency. The allegations in the complaint related to the timing of Snider-Blake's payment to Marshall for her work at Big Lots on November 21, 2020, for which Snider-Blake placed Marshall. More specifically, Marshall alleged that, pursuant to the terms of her agreement with Snider-Blake, she should have been

---

[2] Plaintiff's Complaint does not suggest that it relates in any way to non-payment for overtime wages. Accordingly, the Court construes Plaintiff's Complaint as attempting to assert a claim under § 206 of the FLSA, the minimum wage provision. 29 U.S.C.A. § 206.

[3] Plaintiff's Complaint refers to her scheduled date of payment as Friday November 30, 2020. This appears to be a typographical error. The Court notes that in 2020, November 30 was a Monday. Interpreting the scheduled payment date as November 27, 2020 also is consistent with other allegations in Plaintiff's Complaint and, as further indicated, the state court's recitation of the facts.

paid for her November 21, 2020 work on Friday, November 27, 2020 but was not actually paid until Monday, November 30, 2020. Marshall alleged the untimely payment was a breach of the contract she had with Snider-Blake and sought $250,000 in damages.

…

The matter then proceeded to a bench trial on November 30, 2021. At trial, Marshall testified that when she worked for Snider-Blake and was placed at Big Lots, she should have received a paycheck on Friday, November 27, 2020. The expected paycheck related to work Marshall did at Big Lots on behalf of Snider-Blake on Saturday, November 21, 2020. Marshall testified that she received her paycheck three days later, on Monday, November 30, 2020, but that the delay in payment time was stressful. After the delay in payment, Marshall said she stopped working for Snider-Blake.

…

Following the trial, the trial court issued a December 1, 2021 decision and judgment entry rendering judgment in favor of Snider-Blake on all of Marshall's claims.

…

The parties agree Marshall had a contract of employment with Snider-Blake. The issue at trial was whether Marshall demonstrated a breach of that contract when Snider-Blake paid her for her November 21, 2020 work at Big Lots. The pertinent contract language is found in Snider-Blake's Rules and Regulations of employment and provides:

> 8. I understand that the workweek at Snider-Blake runs from Monday through Sunday and that I must record all time worked and report my time to Snider-Blake by the following Tuesday. I understand that it is my responsibility to have my supervisor sign and verify the hours on my time sheet each week.
>
> 9. If I encounter a payroll error or a delay in receiving my pay, I will notify Snider-Blake within 7 days of the week in which the payroll error occurred.

(Def.'s Ex. A.)

The evidence at trial indicated that Big Lots failed to properly document Marshall's hours worked and submit them to Snider-Blake in a timely fashion. When Marshall notified Snider-Blake of the error, Snider-Blake paid Marshall the day after it received the proper documentation from Big Lots in accordance with the employment Rules and Regulations. Thus, we agree with the trial court that Marshall did not demonstrate a breach of the contract.

5

Moreover, Marshall did not present any evidence of damages that occurred as a result of the alleged breach. When asked at trial what damages she incurred, Marshall repeatedly stated that she was not paid on time. Essentially, Marshall attempted to point to what she deemed proof of the breach as necessarily demonstrating damages. However, as the evidence submitted at trial demonstrated that Marshall was paid, in accordance with the employment Rules and Regulations, the day after Big Lots provided Marshall's completed timecard to Snider-Blake, Marshall's claim lacks merit. Moreover, though Marshall sought punitive damages for the allegedly untimely payment, we are mindful that "[p]unitive damages are not recoverable in an action for breach of contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, paragraph one of the syllabus.

…

The remaining claim in Marshall's complaint is one she deems willful nonpayment. Through her appellate brief, Marshall does not articulate an argument specific to a claim of willful nonpayment. Instead, she argues the trial court erred in failing to find that Snider-Blake violated 41 U.S.C. 6503, Section 1-308 of the Uniform Commercial Code ("UCC"), the Contract Clause of the United States Constitution, and/or the Fair Labor Standards Act ("FLSA").

We agree with the trial court that 41 U.S.C. 6503 is not applicable to Marshall's claim. 41 U.S.C. 6503 relates to public contracts with the federal government. As Snider-Blake is not a government agency, 41 U.S.C. 6503 does not apply.

We additionally agree with the trial court that the Contract Clause of the United States Constitution is inapplicable to this matter. Article I, Section 10, Clause I of the United States Constitution provides "[n]o State shall * * * pass any * * * Law impairing the Obligation of Contracts" and relates to the encroachment of a state upon contracts. *See, e.g., Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 9 ("the United States Constitution specifically protects against state encroachment upon contracts"). As this case does not implicate an act of the state impacting the contract between Marshall and Snider-Blake, the Contract Clause of the United States Constitution does not apply.

To the extent Marshall asserts the trial court should have found Snider-Blake's conduct to be a violation of UCC 1-308, we agree with the trial court that UCC 1-308 does not apply to this matter as the case does not involve a commercial transaction. *See, e.g., Northeast Ohio College of Massotherapy v. Burek*, 144 Ohio App.3d 196, 202 (7th Dist.2001), fn. 6 (Ohio's version of the UCC applies to "commercial transactions, not employment contracts.").

Lastly, though Marshall now argues the trial court erred in failing to find Snider-Blake's conduct was a violation of the FLSA, we note that Marshall's complaint did not assert a claim for an FLSA violation. *See* Civ.R. 8(A) ("[a] pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the

claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled"). Moreover, Marshall's entire argument related to the FLSA is that Snider-Blake failed to promptly pay her. However, as we explained in our resolution of Marshall's breach of contract claim, the evidence at trial demonstrated that Snider-Blake paid her the day after receiving Marshall's completed timecard from Big Lots. Marshall points to no authority indicating the timing of her payment from Snider-Blake violates any portion of the FLSA.

*Marshall v. Snider-Blake Bus. Serv., Inc.,* 2022-Ohio-1869, ¶¶ 2, 4, 10, 16-18, 20-24, 2022 WL 1797013, at **1-4 (Ohio 10th Dist. June 2, 2022), *appeal not allowed,* 2022-Ohio-3322, 167 Ohio St. 3d 1526.

### III.

The doctrine of *res judicata* or claim preclusion operates to bar Plaintiff's claims. Under the doctrine of *res judicata* or claim preclusion, "a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented." *Smith v. Morgan*, 75 F. App'x 505, 506 (6th Cir. 2003). "In determining whether a state-court judgment has a preclusive effect on a subsequent federal action, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts 'to give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Scott v. City of Detroit*, No. 20-11572, 2021 WL 323756, at *2 (E.D. Mich. Feb. 1, 2021) (quoting *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006) (internal quotation marks and citation omitted)). Thus, "[w]hen a court considers '[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit[,]' a federal court is to 'refer to the preclusion law of the State in which the judgment was rendered[,]' not the federal court's own *res judicata* rules. *Armatas v. Aultman Health Found.,* No. 5:19-CV-00349, 2019 WL 8755140, at *9 (N.D. Ohio Dec. 19, 2019), *report and recommendation adopted,* No. 5:19CV349, 2020 WL 1650841 (N.D.

7

Ohio Mar. 27, 2020) (quoting *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 379-380 (1985)). Accordingly, Ohio's *res judicata* law applies here.

"In Ohio, *res judicata* involves both claim preclusion and issue preclusion." *Hake v. Simpson*, No. 3:17-CV-420, 2018 WL 3973098, at *5 (S.D. Ohio Aug. 20, 2018), *aff'd*, 770 F. App'x 733 (6th Cir. 2019) (citing *Grava v. Parkman Township*, 73 Ohio St.3d 379, 381 (1995)). "Under claim preclusion, a valid, final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* (citing *Kirkhart v. Keiper*, 101 Ohio St. 3d 377, 378 (2004)). "Claim preclusion not only bars claims and defenses that were actually brought in the prior action, but also those that were part of the same transaction or occurrence that could have been brought." *Id.* (citing *Grava*, 73 Ohio St. 3d at 382; *Kocinski v. Reynolds*, No. L-99-1318, 2000 WL 1132778, at *2, *4 (Ohio 6th Dist. Aug. 11, 2000)). "'Transaction'" is defined as a "'common nucleus of operative facts.'" *Id.* (quoting *Grava*, 73 Ohio St. 3d at 382)); *see also WCI, Inc. v. Ohio Dep't of Pub. Safety,* 475 F. Supp. 3d 770, 776 (S.D. Ohio 2020), *aff'd,* 18 F.4th 509 (6th Cir. 2021) (quoting *Hake*).

"If a claim is barred by the doctrine of *res judicata*, '[t]he weight of authority supports dismissal for failure to state a claim.'" *Turner v. DeJoy*, No. 221CV02223SHLATC, 2022 WL 1817752, at *4–5 (W.D. Tenn. Mar. 15, 2022), *report and recommendation adopted,* No. 221CV02223SHLATC, 2022 WL 1813910 (W.D. Tenn. June 2, 2022) (quoting *Owens v. Shelby Cnty. Sch. Bd. of Educ.*, No. 2:18-cv-02345-JTF-dkv, 2018 WL 4374238, at *8 (W.D. Tenn. Jul. 18, 2018), *report and recommendation adopted*, 2018 WL 4179076 (W.D. Tenn. Aug. 31, 2018) (collecting Sixth Circuit cases affirming Rule 12(b)(6) dismissal based on res judicata)). "Courts are 'empowered to raise res judicata sua sponte ... in the interests of, *inter alia*, the promotion of

8

judicial economy.'" *Id*. (quoting *Holloway Const. Co. v. U.S. Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) (citations omitted)). Finally, "*res judicata* is an appropriate basis to dismiss for failure to state a claim during the initial screening of a complaint pursuant to § 1915(e)(2)." (citing *Smith v. Morgan*, 75 F. App'x at 506 (affirming dismissal "pursuant to § 1915(e) because the doctrine of res judicata bars consideration of the instant complaint") and *Leirer v. Ohio Bureau of Motor Vehicles Compliance Unit*, 246 F. App'x 372, 374 (6th Cir. 2007) (affirming dismissal based on *res judicata* pursuant to § 1915(e) because the plaintiff "could have made all of the same allegations and claims he makes in his current lawsuit in that earlier second lawsuit")).

As set forth in detail above, Plaintiff reasserts the same claims and causes of action arising out of the same facts she alleged in her state-court case. Plaintiff received a valid, final judgment on the merits of those claims when the state courts rejected them. *WCI, Inc*., 475 F. Supp. 3d 770, 776. Again, it makes no difference that the judgment was obtained in state court because "[s]tate-court judgments are given the same preclusive effect under the doctrines of *res judicata* and collateral estoppel as they would receive in courts of the rendering state." *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015). The claims and defenses that were actually brought in Plaintiff's state-court action are barred, as well as those that were part of the same transaction or occurrence that could have been brought. *WCI, Inc.,* at 776 (citing *Grava*, 73 Ohio St. 3d at 382, 653 N.E.2d 226). This includes any FLSA claim Plaintiff is attempting to raise here.[4]

---

[4] Even if Plaintiff's purported FLSA claim under § 206 was not barred by *res judicata*, she would be unable to succeed on any such claim here. As noted, her claim appears to be for the late payment of wages. Certainly, "[t]he Supreme Court has held that the right to payment of minimum wage under FLSA is the right to 'on-time' payment." *Athan v. United States Steel*, 364 F.Supp. 3d 748, 753 (E.D. Mich. 2019) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697,

Additionally, to the extent Plaintiff's Complaint could be viewed as an attempt to appeal the state-court judgment dismissing her claims against Snider-Blake, a doctrine known as *Rooker-Feldman* limits this Court's ability to adjudicate such claims. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983). "The *Rooker-Feldman* doctrine embodies the notion that appellate review of state-court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). The *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

---

707 (1945); *see also Martin v. United States*, 117 Fed. Cl. 611, 621 (2014) ("The FLSA requires – and the Supreme Court has recognized approvingly – that an employee receive on time payment for work performed. The court understands such timeliness to mean that an employer pays an employee on the regularly scheduled paydays.") Assuming she could demonstrate a late payment under the facts alleged here, the relief she seeks – $250,000.00 in punitive damages – is unavailable for violations of § 206. As explained in *Southerland v. Corp. Transit of Am.,* No. 13-14462, 2014 WL 4906891, at *8 (E.D. Mich. Sept. 30, 2014):

> While the Sixth Circuit has not yet decided whether punitive damages are recoverable under the FLSA, it is clear that such damages could only be recovered under the FLSA's anti-retaliation provision. Section 216(b) specifies the relief available for violations of §§ 206 and 207, the minimum wage and overtime provisions: "unpaid minimum wages, or ... unpaid overtime compensation, as the case may be, and ... an additional equal amount as liquidated damages."
>
> Broader remedies are only available for violations of the FLSA's anti-retaliation provision: "such legal or equitable relief as may be appropriate to effectuate section 215(a)(3) [*sc.* the anti-retaliation provision]." *See Moore v. Freeman,* 355 F.3d 558, 564 (6th Cir.2004) (recognizing split among circuits on availability of punitive damages under § 216(b)); *Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108, 112 (7th Cir.1990) (holding punitive damages available under FLSA, but only for retaliation claims, based on language of § 216(b)).

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005). "The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d at 548.

## IV.

For the reasons set forth above, it is **RECOMMENDED** that the Complaint be **DISMISSED** in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) because it is barred by the doctrine of *res judicata*. Alternatively, to the extent Plaintiff's Complaint could be construed as an appeal of a state court judgment, it is **RECOMMENDED** that it be **DISMISSED** in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the

magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

    **IT IS SO ORDERED.**

**DATED:  November 8, 2022**                  */s/ Elizabeth A. Preston Deavers*
                                                            **ELIZABETH A. PRESTON DEAVERS**
                                                            **UNITED STATES MAGISTRATE JUDGE**